United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.L.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SSA COMMISSIONER,<br><br>　　　　　Defendant. | Case No.  25-cv-02494-VKD<br><br>**ORDER RE SOCIAL SECURITY APPEAL**<br><br>Re: Dkt. Nos. 10, 11, 14 |

Plaintiff M.L.[1] challenges a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq.*  M.L. contends that the ALJ erred in concluding that his mental impairments are not severe, erred in evaluating certain medical opinions, and erred in discounting M.L.'s testimony regarding his mental impairments.  The Commissioner maintains that the ALJ's decision is supported by substantial evidence and free of legal error.

The parties have filed their respective briefs.  Dkt. Nos. 10, 11, 14.  The matter was submitted without oral argument.  Civil L.R. 16-5.  Upon consideration of the papers and the relevant evidence of record, for the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.[2]

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials.  This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally

United States District Court
Northern District of California

## I.      BACKGROUND

M.L. was 61 years old on June 22, 2021, the date he filed his application for SSI.  *See* AR[3] 77, 105.  The record indicates that M.L. completed eleventh grade, and that he previously worked in a belt buckle factory but has not worked since 1986.  *See* AR 58, 327, 486.  M.L. was homeless for five to ten years until February 2023 when he obtained a subsidized apartment.  AR 70-71, 510.

On June 22, 2021, M.L. applied for SSI, alleging disability beginning January 1, 1986.  AR 79.  M.L. later amended the alleged onset date to June 22, 2021.  *See* AR 57, 89.  M.L. alleged disability due to post-traumatic stress disorder ("PTSD"), anxiety, and depression.  AR 79  M.L.'s application was denied initially and on review.  AR 78-86, 88-104.  On May 16, 2024, the ALJ held a hearing at which a vocational expert testified.  AR 43-51.  M.L. failed to appear at the May 16, 2024 hearing.  *Id.*  On October 3, 2024, the ALJ held another hearing which M.L. attended.  AR 52-76.

On October 31, 2024, the ALJ issued an unfavorable decision.  AR 25-36.  The ALJ found that M.L. has not engaged in substantial gainful activity since June 22, 2021.  AR 27.  The ALJ further found that M.L. has a severe impairment of lumbar degenerative disc disease ("DDD").  *Id.* At one point, M.L. also alleged a shoulder impairment, but the ALJ concluded that the alleged shoulder impairment is not a medically determinable impairment.  *Id*.  The ALJ concluded that M.L. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 29.  Additionally, the ALJ found that M.L. has medically determinable mental impairments of depression, social anxiety, and PTSD, but he concluded that these impairments do not cause more than minimal limitations in M.L.'s ability to perform basic mental work activities and are therefore not severe.  AR 28.

The ALJ determined that M.L. has the residual functional capacity ("RFC") to perform

adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 8.

[3] "AR" refers to the certified administrative record filed with the Court.  Dkt. No. 9.

medium work as defined in 20 C.F.R. 416.967(c).  AR 29.  The ALJ found that M.L. has no past relevant work.  AR 35.  However, the ALJ found that based on M.L.'s age, education, work experience, and RFC, M.L. could perform jobs that exist in significant numbers in the national economy, such as laborer, stores; cleaner, laboratory equipment; and cleaner, industrial.  AR 35-36.  Accordingly, the ALJ concluded that M.L. has not been disabled, within the meaning of the Act, from the alleged onset date of June 22, 2021 through the October 31, 2024 date of the ALJ's decision.  AR 36.

The Appeals Council denied M.L.'s request for review of the ALJ's decision on January 29, 2025.  AR 1-3.  M.L. then filed the present action seeking judicial review of the decision denying his application for benefits.

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

United States District Court
Northern District of California

## III.   DISCUSSION

On appeal, M.L. challenges several determinations made by the ALJ.  First, M.L. challenges the ALJ's finding that his mental impairments are non-severe.  Dkt. No. 10 at 4. Second, he argues that the ALJ did not properly evaluate the medical opinions of four sources.  *Id.* at 12-22.  Third, he argues that the ALJ erred in his evaluation of M.L.'s hearing testimony regarding his mental impairments.  *Id.* at 22-24.  The Commissioner argues that substantial evidence supports the ALJ's determination that M.L.'s mental impairments are not severe; the ALJ reasonably evaluated the medical opinions; and the ALJ reasonably discounted M.L.'s subjective testimony.  Dkt. No. 11.  The Court first addresses the parties' arguments regarding the ALJ's evaluation of the medical opinions and then considers their arguments regarding M.L.'s subjective testimony.

### A.   Medical Opinions

M.L. contends that the ALJ did not properly evaluate the medical opinions[4] of:  (1) non-examining state agency medical consultants Uwe Jacobs, Ph.D., and Stacy Koutrakos, Psy.D.; (2) psychological evaluator Laura Catlin, Psy.D.; (3) psychological evaluator Mary LaGue, Psy.D.; and (4) treating physician Kevin Critchlow, M.D.  Dkt. No. 10 at 12-22.  The Commissioner maintains that the ALJ properly evaluated these medical opinions.  Dkt. No. 11 at 5-9.

Under the regulations that apply to M.L.'s application,[5] the Commissioner does not give specific evidentiary weight to medical opinions.  Instead, the Commissioner evaluates the

---

[4] What were previously termed "medical opinions" from state agency medical and psychological consultants have now been relabeled as "prior administrative medical findings."  20 C.F.R. § 416.913(a)(5); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62563-64 (Sept. 9, 2016). However, because "prior administrative medical findings" continue to be treated the same as other medical opinions, for clarity, the Court refers to the "prior administrative medical findings" as "opinions" throughout this Order.  *See* 20 C.F.R. § 416.920c (considering "prior administrative medical findings" in the same manner and using the same factors as "medical opinions"); *see also* Revisions to Rules, 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 ("We would consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions from medical sources.").

[5] The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017 and apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 416.920c.  Because M.L.'s application was filed after March 27, 2017, these revised regulations apply to his case.

United States District Court
Northern District of California

"persuasiveness" of all medical opinions in the record based on:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). An ALJ's decision, "including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods*, 32 F.4th at 787.

Supportability and consistency are the most important factors, and the ALJ is required to explicitly address them in his or her decision.  20 C.F.R. § 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (citation omitted).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (citation omitted).  The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations.  20 C.F.R. § 416.920c(b)(2).

### 1.    State Agency Medical Consultants Dr. Jacobs and Dr. Koutrakos

M.L. contends that the ALJ erred in relying on the opinions of state agency medical consultants Uwe Jacobs, Ph.D., and Stacy Koutrakos, Psy.D. to conclude that M.L. suffered from no severe mental impairment.  Dkt. No. 10 at 12-14.  The Commissioner responds that the ALJ properly assessed the consultants' opinions.  Dkt. No. 11 at 5.  The Court agrees with M.L.

Dr. Jacobs is a state agency medical consultant who conducted an initial review of M.L.'s claim on April 30, 2022.  AR 78-86.  Dr. Koutrakos is a state agency medical consultant who reviewed M.L.'s claim on reconsideration on January 31, 2023.  AR 88-104.  Both Dr. Jacobs and Dr. Koutrakos found the record evidence insufficient to assess M.L.'s mental impairments.  AR 84, 99-100.  Dr. Jacobs remarked: "No [psychological medical evidence of record], no forms, [insufficient evidence]."  AR 84.  Dr. Koutrakos noted that M.L. reported "[l]imitations . . . but

United States District Court
Northern District of California

able to pay bills, manage bank accounts, use public transportation, go out alone, ok with instructions, finishes what is started, has no problems getting along with others." AR 99. Dr. Koutrakos also noted Dr. Catlin's July 24, 2021 psychological disability evaluation report, and remarked: "A current detailed [psychological] exam with testing appears needed." *Id.*

The ALJ found the opinions of Drs. Jacobs and Koutrakos "largely persuasive" with respect to M.L.'s mental impairments. AR 32. He explained that "[b]oth doctors assessed that there was insufficient evidence to support the existence of a severe mental impairment as there were no psychological treatment records to review in the record." *Id.* The ALJ then concluded, "As such, based on their respective reviews of the evidence that was available at the time, I find these opinions persuasive." *Id.*

M.L. argues that the ALJ erred in treating the opinions of Dr. Jacobs and Dr. Koutrakos as if they reflected determinations that M.L. had no severe mental impairments, when in fact both consultants expressly found there was insufficient evidence for any such determination. Dkt. No. 10 at 12-13. The Court agrees with M.L. Other courts in this District have observed that medical opinions or prior administrative medical findings that "merely state that there is insufficient evidence to evaluate [p]laintiff's mental health impairments" do not support a finding that a claimant *does not have* a mental impairment. *See Vanessa W. v. SSA Comm'r*, No. 24-cv-08003-TSH, 2026 WL 280481, at *8-10 (N.D. Cal. Feb. 3, 2026) (holding that opinions that stated there was insufficient evidence did not contradict psychologist's opinion that the plaintiff had mostly marked limitations in all domains of functioning); *see also Donna S. v. Kijakazi*, No. 21-cv-03560-KAW, 2022 WL 17970216, at *2-3 (N.D. Cal. Sept. 7, 2022) (finding that the ALJ "possessed *no* medical opinions regarding [p]laintiff's mental impairments" where four state agency clinicians found that there was insufficient evidence to render a medical opinion regarding plaintiff's impairments). Here, Dr. Jacobs stated that he did not have any psychological records to review, and Dr. Koutrakos recommended psychological testing of M.L. AR 84, 99. The ALJ erred in construing the state agency medical consultants' statements of "insufficient evidence" as definitive "assess[ments] that there was insufficient evidence to support the existence of a severe mental impairment." AR 32. In addition, the Court agrees with M.L. that to the extent the ALJ

United States District Court
Northern District of California

treated the assessments performed by Dr. Jacobs and Dr. Koutrakos as medical opinions, the ALJ's evaluation does not comply with the applicable regulations, as the ALJ failed to address the supportability and consistency of those opinions. *See* 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ").

In sum, the ALJ's evaluation of the opinions of Dr. Jacobs and Dr. Koutrakos is not supported by substantial evidence.

### 2.    Psychological Examiner Dr. Catlin

M.L. argues that the ALJ erred in discounting the opinion of psychological examiner Laura Catlin, Psy.D. as "unpersuasive." Dkt. No. 10 at 14-18. The Commissioner argues that the ALJ properly evaluated Dr. Catlin's opinion. Dkt. No. 11 at 6-7. The Court agrees with the Commissioner.

Dr. Catlin examined M.L. by telephone on one occasion in July 2021, just after M.L.'s amended date of alleged onset. AR 485. Dr. Catlin diagnosed M.L. with major depressive disorder, recurrent, moderate; mild neurocognitive disorder; and features of avoidant personality disorder. AR 489. According to Dr. Catlin, M.L. "reported struggling with depression and anxiety for most of his life." AR 485. M.L. also reported that he has never felt comfortable in a social setting and felt that he "has never fit in." *Id.* M.L. stated that his social anxiety has caused problems maintaining employment and problems with his relationships with friends and family. *Id.* M.L. stated that he no longer participates in pleasurable activities and he spends a lot of time alone. *Id.* M.L. reported that he has difficulty performing household chores such as washing dishes, doing laundry, and taking the trash out because of his back pain, and that he does not drive or take public transportation because of his anxiety. *Id.* M.L. stated that he can shop for groceries and prepare a simple microwaveable meal. *Id.* M.L. reported that he has difficulty concentrating and remembering to do important things without reminders. *Id.*

Dr. Catlin observed that M.L.'s response time to questions was within the normal range and that M.L. appeared engaged in the evaluation and able to sustain his attention. AR 487. She further observed that M.L.'s mood was depressed and anxious but he did not report suicidal

thoughts, plans, or intent. *Id.* Dr. Catlin noted that M.L.'s insight and judgment were limited. *Id.* She noted that M.L. reported he had more difficulty concentrating than he used to. *Id.* M.L. scored 14 out of 22 on the Montreal Cognitive Assessment (MoCA) which assesses different cognitive domains that include attention and concentration, memory, language, conceptual thinking, calculations, and orientation. AR 488. Dr. Catlin noted that any score below 18 indicates mild cognitive impairment. *Id.* Specifically, Dr. Catlin observed that M.L. showed impairment in the domains of language, immediate memory, and delayed recall. *Id.* However, Dr. Catlin noted that "[b]ecause this test has been performed over the phone[,] the results should be interpreted with caution and [the test] is not on its own a definitive diagnosis of cognitive impairment but rather an indication that more testing should be considered." *Id.*

Based on her examination, Dr. Catlin concluded that M.L. has marked limitations in his ability to understand, remember, and apply information and ability to adapt or manage oneself. AR 491, 493. She further concluded that M.L. has extreme limitations in his ability to interact with others and ability to concentrate, persist, or maintain pace. AR 492. Dr. Catlin stated that M.L. will have "great difficulty performing well and consistently in the work place." AR 490.

The ALJ found Dr. Catlin's opinion "unpersuasive." AR 32. He explained that Dr. Catlin's opinion that M.L. suffered marked to extreme limitations in all four of the "paragraph B" functional areas is inconsistent with the totality of medical evidence. *Id.* In particular, the ALJ observed that M.L.'s statement to Dr. Catlin that he has difficulty performing activities of daily living is inconsistent with M.L.'s statement to consultative examiner Dr. Robert Tang on January 31, 2023 that he is fully able to care for his personal needs. AR 31-32 (citing AR 503). In addition, the ALJ noted that Dr. Catlin's opinion that M.L. has an extreme limitation in his ability to cooperate with others is inconsistent with other records which consistently describe M.L. as cooperative. AR 33 (citing AR 463, 465, 504, 559, 568, 635, 648, 656). The ALJ also found Dr. Catlin's conclusion that M.L. has an extreme limitation in his ability to manage psychologically-based symptoms inconsistent with the record because M.L. never alleged a complete inability to manage his anxiety, his treatment notes showed that his mental status exams were normal, and he had received no prior formal diagnosis of any mental health impairment. *Id.* (citing AR 518-664).

United States District Court
Northern District of California

United States District Court
Northern District of California

The ALJ also found that Dr. Catlin's opinion is not supported by adequate explanation. AR 32. Specifically, the ALJ noted that Dr. Catlin's opinion that M.L. suffers an extreme limitation in his ability to ask and answer questions and provide explanations is not supported by Dr. Catlin's own findings and observations because Dr. Catlin noted that M.L.'s "response [time] to questions asked of him [was] within the normal range." AR 32-33 (citing AR 487). The ALJ also observed that Dr. Catlin's conclusion that M.L. suffers an extreme limitation in his ability to manage psychologically-based symptoms is unsupported because Dr. Catlin noted that interacting with others is "very difficult" for M.L., but not impossible. AR 33 (citing AR 489-490). Lastly, the ALJ noted that Dr. Catlin stated that because the MoCA test was conducted over the phone, the results should be interpreted with caution and are not, on their own, a definitive diagnosis of cognitive impairment but rather an indication that more testing should be considered. *Id.* (citing AR 488).

M.L. acknowledges that the ALJ considered both supportability and consistency in evaluating Dr. Catlin's opinion. *See* Dkt. No. 10 at 14-18. However, M.L. argues that the ALJ failed to take a "holistic view of the record" because "[a] few positive observations do not render a medical professional's diagnosis unsupported." *Id.* at 15. According to M.L., Dr. Catlin's observation that M.L.'s response time to questions was within the normal range does not reflect M.L.'s ability to ask and answer questions and provide explanations in a regular, competitive work setting as opposed to "a highly structured[,] less demanding and more supportive setting such as that provided by Dr. Catlin." *Id.* Similarly, M.L. argues that the ALJ erred in finding that the medical record "consistently notes the claimant is cooperative" because treatment providers did not formally assess M.L.'s ability to function in the workplace and only evaluated M.L. in "highly structured, less demanding and more supportive types of settings." *Id.* In addition, M.L. contends the ALJ "misrepresent[ed]" the evidence when he concluded that Dr. Catlin's finding of extreme limitation in M.L.'s ability to manage psychologically-based symptoms is inconsistent with the record. *Id.* at 15-16. Finally, M.L. argues that the ALJ erred in finding Dr. Catlin's opinion inconsistent with other evidence in the record because Dr. LaGue's opinion and M.L.'s hearing testimony are consistent with Dr. Catlin's opinion. *Id.* at 17-18.

9

United States District Court
Northern District of California

The Court disagrees with M.L.  The ALJ applied the correct legal standard in evaluating Dr. Catlin's opinion, and his findings are supported by substantial evidence.  First, the ALJ did not fail to take a "holistic view of the record."  To the contrary, the ALJ specifically considered evidence in the record from different medical sources.  AR 32-33.  For example, the ALJ observed that Dr. Catlin's opinion that M.L. suffers marked or extreme limitations in each of the paragraph B functional areas is inconsistent with M.L.'s own statements to Dr. Tang that his chief complaint regarding his inability to work is "stress" and that he is fully[] able to care for his personal needs.  AR 31-32.  M.L. does not challenge the ALJ's characterization of that evidence.  In addition, in discussing the paragraph B functional areas, the ALJ specifically considered and addressed other evidence in the record showing that M.L. has no limitations or only mild limitations in these areas.[6]  *See* AR 28-29.  M.L. contends that to the extent the record contains observations about his ability to respond to questions within a normal time range and his ability to be cooperative, those observations are not indicative of his abilities in a regular workday as opposed to a "highly structured," "less demanding," and "more supportive" setting like a doctor's visit.  Dkt. No. 10 at 15.  However, M.L. fails to point to any "non-structured" evidence in the record that supports or is consistent with Dr. Catlin's opinion that M.L. has marked and extreme limitations in the paragraph B functional areas.[7]

Second, the ALJ correctly noted that during M.L.'s most continuous period of treatment at LifeLong Medical, from August 10, 2023 to April 24, 2024, "his [mental status exams] were normal, and no formal diagnosis of *any* mental health impairment was given."  AR 33.  M.L. points to a medical "Problem List" that includes "[d]epressive disorder" and "[h]istory of behavioral and mental health problems" as M.L.'s "problems" and notes a "2017 note from

---

[6] *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (in assessing whether ALJ's decision is supported by substantial evidence, courts "look[] to *all* the pages of the ALJ's decision"); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (law requires ALJ "to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings'") (quotations and citation omitted).

[7] To the extent M.L. contends that the ALJ overlooked Dr. Catlin's opinion's consistency with Dr. LaGue's opinion, Dr. LaGue's opinion is also based on interacting with M.L. in a "highly structured," "less demanding," and "more supportive" environment than a regular workplace.

10

United States District Court
Northern District of California

S[ocial] W[ork]er indicates p[atien]t endorsed depression and passive S[uicidal] I[deation], but p[atien]t did not follow up with care." Dkt. No. 10 at 16 (citing AR 520-521). M.L. also points to other treatment notes indicating "diagnos[es]" of PTSD, paranoid thoughts, and a history of concussions. *Id.* (citing AR 521, 553, 555, 560, 563, 568, 574, 578, 584, 585, 591, 592, 597, 604, 611, 618, 625, 631, 643, 651). However, a review of the record indicates that the references to M.L.'s mental health "problems" and "history" are not diagnoses but are instead "merely a cursory recitation of [M.L.'s] history." *See Castelblanco v. Colvin*, No. 13-cv-05315-JCS, 2014 WL 3964950, at *13-14 (N.D. Cal. Aug. 13, 2014) (rejecting plaintiff's argument that provider's note that "[c]lient has a history of Schizoaffective Disorder" was a diagnosis); *see also Petkevich v. Astrue*, No. 12-cv-2352 SI, 2013 WL 1786594, at *6 n.4 (N.D. Cal. Apr. 25, 2013) (holding that doctor's notes regarding plaintiff's continued hand pain "was not a diagnosis or 'finding,' as plaintiff puts it, but a 'subjective complaint' mentioned in [the doctor's] notes."). For example, the "Problem List" that M.L. points to states that on August 17, 2021, M.L. reported that "he was put on disability because of 'mental stress,' sometime around 1986," and that in 2017, a social worker noted that M.L. "endorsed depression and passive S[uicidal] I[deation], but p[atien]t did not follow up with care." AR 521. The note also states that on December 16, 2022, M.L. was re-referred to the psychology department. *Id.* This note does not state that any provider diagnosed M.L. with any mental health diagnosis. Rather, the note recounts statements by M.L. and his social worker and says M.L. was referred to the psychology department without further information. M.L. also points to a March 1, 2024 treatment note that lists "[i]nsomnia, unspecified type (primary)" and "[s]tress disorder, posttraumatic" as "Visit Diagnoses." AR 555. However, a review of the complete treatment note shows that these conditions are described under the heading "Reason for Visit," and that the provider wrote that "[t]here are no diagnoses linked to this encounter" and that the "[p]lan" is to "[a]ssess for depressive symptoms and memory." AR 555, 561. The treatment note indicates that while the provider recorded M.L.'s subjective complaints of insomnia and PTSD, the provider did *not* formally diagnose M.L. with any mental health condition but rather recommended assessment of M.L.

Moreover, as the Commissioner points out, M.L. did not attend several of the appointments

11

at which M.L. asserts he was formally diagnosed, and the ALJ appropriately considered the reliability of such purported *in absentia* diagnoses. *See* AR 553 (noting M.L. was a "No-show" at April 1, 2024 appointment); AR 574 (same note for January 19, 2024 appointment); AR 578 (same note for January 5, 2025 appointment). At the other appointments that M.L. cites, treatment notes reflect that M.L.'s mental status exams were normal and that M.L. consistently informed his treating providers that he was feeling fine. *See, e.g.*, AR 555-556 ("Chief complaint: 'Doing good.'"); AR 560-561 ("There are no diagnoses linked to this encounter."); AR 563-564 ("Chief complaint: 'Doing much better.'"); AR 568 ("Reported Mood: 'okay'"); AR 584-585 (noting in connection with M.L.'s "[h]istory of concussion," M.L. reported that "[t]hings are improving. Feeling better. No questions."); AR 631-637 ("Reported Mood: 'okay'"); AR 643-648 ("Reported Mood: 'okay'"); AR 651-657 ("Reported Mood: 'okay'"). Therefore, the ALJ did not err in finding that M.L.'s mental status exams were normal and that M.L.'s providers at LifeLong Medical did not formally diagnose M.L. with any mental health impairment.

Finally, M.L. argues that Dr. LaGue's opinion and his own hearing testimony are consistent with Dr. Catlin's opinion, and therefore, the ALJ erred in finding Dr. Catlin's opinion unpersuasive. Dkt. No. 10 at 17-18. However, the ALJ also discounted both Dr. LaGue's opinion and M.L.'s hearing testimony, *see* AR 30-34, and as explained below, those determinations are supported by substantial evidence and free from legal error.

Accordingly, the ALJ's assessment of Dr. Catlin's opinion as "unpersuasive" is supported by substantial evidence, and the Court finds no error here.

### 3.    Psychological Examiner Dr. LaGue

M.L. argues the ALJ also improperly rejected the opinion of psychological evaluator Mary LaGue, Psy.D. as "unpersuasive." Dkt. No. 10 at 18. The Commissioner responds that the ALJ properly evaluated Dr. LaGue's opinion. Dkt. No. 11 at 7-8. The Court agrees with the Commissioner.

Dr. LaGue examined M.L. in person on April 2, 2024. AR 509. In the mental status exam, Dr. LaGue noted M.L. was "well groomed," and that he "was engaged in the evaluation and able to sustain his attention." AR 510. She also noted that M.L.'s "mood was depressed" and that

12

M.L. reported that he has had suicidal thoughts in the past but he never endorsed a plan or intent. AR 511. M.L. denied any suicidal and homicidal ideations at the time of the assessment. *Id.* Dr. LaGue assessed that M.L. had a goal-directed and linear thought process; thought content that evidenced perseveration on negative thinking; and limited insight and judgment. *Id.* Additionally, Dr. LaGue noted that M.L. had difficulty concentrating, often asking for questions, choices, and instructions to be repeated. *Id.*

Dr. LaGue assessed M.L. using the Repeated Battery for the Assessment of Neuropsychological Status (RBANS), "which measures immediate and delayed memory, attention, language, and visuospatial skills." *Id.* She reported that he scored in the borderline range "which is between low average and extremely low." *Id.* Additionally, M.L. scored a 44 on the Beck Depression Inventory (BDI), "indicating symptoms of Extreme Depression," and scored a 33 on the Burn's Anxiety Inventory, indicating symptoms of severe anxiety. AR 511-512. Dr. LaGue diagnosed M.L. with major depressive disorder, recurrent, severe; generalized anxiety; and avoidant personality disorder, provisional. AR 512. Dr. LaGue opined that M.L. "will have great difficulty performing well and consistently in the workplace" and that he "is expected to encounter challenges in acquiring new skills, following instructions from superiors, and effectively applying the provided information due to both cognitive impairments and metal health symptoms." AR 513. Dr. LaGue assessed M.L. with overall marked functional limitations in each of the paragraph B functional areas. AR 514-516. Specifically, Dr. LaGue assessed M.L. with marked to extreme limitations in the sub-categories of his ability to understand, remember, and apply information and of his ability to interact with others; moderate to extreme limitations in the sub-categories of his ability to concentrate, persist, or maintain pace; and moderate to marked limitations in the sub-categories of his ability to adapt or manage oneself. *Id.* Dr. LaGue stated that due to M.L.'s impairments, M.L. "is unable to engage in any meaningful employment and would not be able to obtain or retain a job." AR 516.

The ALJ found Dr. LaGue's opinion "unpersuasive" on the grounds that it is unsupported and inconsistent, and that it relies heavily on M.L.'s allegations of subjective complaints on the day of the evaluation. AR 33. The ALJ remarked that "the *longitudinal* record does not support"

13

that M.L. consistently suffered from the conditions Dr. LaGue described. *Id.* In particular, citing the LifeLong Medical treatment notes, the ALJ observed that "Dr. LaGue's documentation of such significant symptoms exists in complete contrast to [M.L.'s] treatment notes at LifeLong Medical which showed no complaints of depression or anxiety (and no diagnoses of either), and normal [mental status exams]." *Id.* (citing AR 518-664). The ALJ noted that M.L. has not sought treatment for, or generally complained of, the severity of symptoms he described to Dr. LaGue. *Id.* In addition, the ALJ stated that Dr. LaGue's findings of extremely low immediate and delayed memory are inconsistent with findings of intact memory on M.L.'s mental status exams. AR 33-34 (citing AR 560, 568, 636, 648, 656). Finally, the ALJ found that Dr. LaGue's assessment of marked and extreme limitations in the sub-categories of concentration, persistence, or pace are not supported by the results of her own RBANS testing, which showed average attention, as well as her own observation that M.L. "was engaged in the evaluation and able to sustain his attention." AR 34.

M.L. argues, as before, that the ALJ erred in rejecting Dr. LaGue's opinion because the ALJ mistakenly concluded that the notes reflecting M.L.'s treatment at LifeLong Medical "have no mental health diagnoses nor do they reflect complaints of depression" and the longitudinal record supports that M.L. reported symptoms of depression and anxiety on other occasions. Dkt. No. 10 at 18-20. M.L. further argues that the ALJ relied improperly on M.L.'s failure to seek treatment consistent with the degree of his complaints without first considering why M.L. may not have sought treatment. *Id.* at 19.

Although it is a closer call, the Court disagrees with M.L. First, to the extent M.L. cites the same treatment notes that he referenced in connection with his arguments relating to Dr. Catlin, *compare id.* at 16 *with id.* at 19, his argument that the ALJ misrepresented those treatment records is not supported by a review of the records. While M.L. reported to LifeLong Medical on August 28, 2023 that he "believes that he has mental health issues, and requested evaluation by psychiatry,"[8] AR 652, the treatment records do not reflect any complaints of depression or anxiety

---

[8] M.L. contends that "[t]reatment notes dated March 2024 from Lifelong Medical note that [M.L.] 'reports that he believes he has mental health issues and requested evaluation by psychiatry[.']"

United States District Court
Northern District of California

or any diagnoses or treatments for mental health issues.  M.L. attended seven visits at LifeLong Medical from August 2023 to March 2024, just one month before Dr. LaGue's evaluation.  AR 555, 563, 584, 591, 631, 643, 651.  The ALJ correctly noted that the LifeLong Medical treatment notes indicate that M.L. did not complain of depression or anxiety and that there were no diagnoses of either condition at any of these visits.  *See* AR 651-657 (August 28, 2023: "okay . . . for the moment"; mood: "okay"; "Clt denied low mood"; "no diagnoses linked to this encounter"); AR 643-649 (September 25, 2023: "okay . . . for the moment"; mood: "okay"; "Clt denied low mood"; "no diagnoses linked to this encounter"); AR 631-637 (November 13, 2023: mood: "okay"; "Clt denied low mood"; "no diagnoses linked to this encounter"); AR 591-594 (November 15, 2023: post-concussion visit; no mental status exam; "No results found for this visit on 11/15/23"); AR 584-586 (December 1, 2023: post-concussion visit; "Things are improving. Feeling better.  No questions."; "Overall feeling better.  Not forgetting things as much.  Feeling back to normal."; no mental status exam); AR 563-569 (January 22, 2024: "Doing much better"; mood: "okay"' "Clt denied low mood"; "no diagnoses linked to this encounter"); AR 555-561 (March 1, 2024: "Doing good"; mood: "alright"; "Clt denied low mood"; "no diagnoses linked to this encounter").  The ALJ also correctly noted that M.L.'s memory was observed as intact on mental status exams.  *See* AR 560, 568, 636, 648, 656 (each noting M.L.'s memory was "grossly intact").  The LifeLong Medical treatment notes do not contain any mental status exams showing otherwise.

Second, M.L. contends the ALJ erred by failing to consider Dr. LaGue's opinion as consistent with Dr. Catlin's opinion diagnosing M.L. with major depressive disorder.  Dkt. No. 10 at 19-20.  For the reasons explained above, the ALJ did not err in discounting Dr. Catlin's opinion and therefore, the ALJ did not err in also finding Dr. LaGue's opinion inconsistent with the record.

Third, M.L. contends that the ALJ should not have relied on M.L.'s failure to seek treatment as a basis for discounting Dr. LaGue's opinion without analyzing possible reasons for M.L.'s failure to seek treatment.  Dkt. No. 10 at 19.  The ALJ noted that M.L. "has simply not

---

Dkt. No. 10 at 20 (citing AR 560).  The note M.L. refers to is a copy of an August 28, 2023 treatment note.  AR 652.

sought treatment for, or generally complained of, the severity of symptoms he alleged to Dr. LaGue on the day of his evaluation." AR 33. "The failure to seek formal mental health treatment is hardly probative of whether a claimant suffers from a mental impairment." *Jaimie V.W. v. Kijakazi*, No. 20-cv-03612-SK, 2022 WL 612664, at *7 (N.D. Cal. Mar. 1, 2022) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Typically, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017); *see also Nguyen*, 100 F.3d at 1465 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). However, where the record does not indicate that a lack of treatment is due to resistance to treatment stemming from a plaintiff's mental health issues, it is "reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints." *Meyers v. Berryhill*, 733 F. App'x 914, 915-16 (9th Cir. 2018) (quoting *Molina*, 674 F.3d at 1114).

Here, M.L. does not contend that he attempted to seek mental health care but was prevented from doing so due to his mental health impairments. Without any evidence or argument that M.L. had compelling reasons for failing to seek treatment comparable with the degree of his complaints to Dr. LaGue, the Court finds it was reasonable for the ALJ to note M.L.'s failure to seek treatment as a reason to discount Dr. LaGue's opinion. *See Serna v. King*, No. 25-cv-01307-NW, 2026 WL 800355, at *5 (N.D. Cal. Mar. 23, 2026) (holding the ALJ reasonably considered plaintiff's failure to seek treatment where plaintiff "entirely fail[ed] to address his noncompliance with treatment recommendations"). Moreover, the ALJ did not solely rely on M.L.'s lack of treatment in finding Dr. LaGue's opinion unpersuasive. Rather, the ALJ relied on other reasons, including that Dr. LaGue's opinion was inconsistent with M.L.'s treatment notes, as explained above. The ALJ did not err in considering M.L.'s failure to seek treatment consistent with the severity of his complaints when evaluating Dr. LaGue's opinion. *Cf. Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility

16

determination.").

The Court concludes that the ALJ's stated reasons for discounting Dr. LaGue's opinion as "unpersuasive" are supported by substantial evidence, and the Court finds no error here.

#### 4.    Treating Physician Dr. Critchlow

M.L. contends that the ALJ erred in rejecting treating physician Kevin Critchlow's opinion about M.L.'s physical limitations on the basis that the opinion is unsupported and inconsistent with the totality of the medical evidence.  Dkt. No. 10 at 20.  The Commissioner argues the ALJ properly concluded that Dr. Critchlow's opinion is not supported by Dr. Critchlow's own treatment records and is inconsistent with other treatment records.  Dkt. No. 11 at 8-9.  The Court agrees with the Commissioner.

Dr. Critchlow began treating M.L. as his primary care physician in August 2021.  *See* AR 522.  On May 31, 2024, Dr. Critchlow completed a physical RFC questionnaire.  AR 665.  Dr. Critchlow found that M.L. can lift and carry 20 pounds occasionally and 25 pounds frequently; can stand and walk about four hours in an eight-hour day; can sit about six hours in an eight-hour day; can sit for 90 minutes and stand for 45 minutes before changing position; must walk around every 90 minutes in ten-minute intervals; and sometimes needs to lie down at unpredictable intervals during a work shift.  *Id.*  Dr. Critchlow also determined that M.L. can occasionally stoop, kneel, crouch, and climb stairs/ladders, and never crawl.  AR 666.  Dr. Critchlow stated that "[d]egenerative changes and L4-L5 neural foraminal stenosis on right side on 5/2020 CT scan" supported his findings regarding M.L.'s physical limitations.  *Id.*  In addition, Dr. Critchlow opined that M.L. should avoid moderate exposure to extreme cold, extreme heat, and humidity because "[a]ge and related fitness make heat, cold and humidity a health risk."  *Id.*  Dr. Critchlow opined that M.L.'s impairments or treatments would cause him to be absent from work about twice a month and that his impairments or treatments would interfere with his concentration or pace of work during approximately 20% of a workday.  AR 667.

The ALJ found Dr. Critchlow's opinion "unpersuasive."  AR 34.  The ALJ explained that Dr. Critchlow's opinion is unsupported by his own records of treatment with M.L.  *Id.*  Specifically, the ALJ noted that Dr. Critchlow did not formally diagnose M.L. with a mental

condition, treat him for back pain, or perform a physical examination of M.L. *Id.* Rather, the ALJ observed that Dr. Critchlow treated M.L. for "complaints of left shoulder pain," "a history of behavioral and mental health problems," and "a concussion in November of 2023." *Id.* The ALJ further found Dr. Critchlow's opinion inconsistent with the totality of the medical evidence. *Id.* The ALJ concluded that Dr. Critchlow did not tie any of his assessed RFC limitations to any objective findings regarding M.L.'s functional limitations or even to M.L.'s subjective complaints. *Id.*

M.L. contends that the ALJ's evaluation is based on a mischaracterization of Dr. Critchlow's treatment of M.L. Dkt. No. 10 at 20-22. Specifically, M.L. argues that Dr. Critchlow saw M.L. for "low back strain," diagnosed M.L. with depressive disorder, and noted that M.L. has a "[h]istory of behavioral and mental health problems." *Id.* at 20-21. M.L. further argues that Dr. Critchlow's opinion is supported by a May 2020 CT scan demonstrating M.L.'s DDD and consistent with treatment notes documenting M.L.'s complaints of back pain. *Id.* at 21. M.L. further contends that because the ALJ did not "rely on the medical evidence and opinion[s] provided from his treatment providers at Lifelong Medical and Sutter Health," and "instead, chose to rely upon the one-time examining opinion of a non-treating source, that of Dr. Tang," who found no physical limitations, the ALJ's RFC determination "has no support in evidence." *Id.* at 21-22.

The Court disagrees with M.L. First, while M.L. argues that Dr. Critchlow "saw [M.L.] for 'low back strain, initial encounter' on August 05, 2021," the cited record shows that M.L.'s "low back strain" was "Noted on: 05/29/2020," the same day as his May 2020 CT scan, and that Dr. Critchlow simply "edited" this note on August 5, 2021. AR 521; AR 460 (showing CT scan was conducted on May 29, 2020). This does not reflect that Dr. Critchlow treated M.L. for "low back strain." Second, as explained above, no providers at LifeLong Medical diagnosed M.L. with a mental condition. The treatment notes that M.L. cites simply reference M.L.'s medical history and do not show that Dr. Critchlow formally diagnosed M.L. with any mental impairment. *See* AR 520 (M.L.'s medical "Problem List"). At most, Dr. Critchlow edited pre-existing treatment notes in M.L.'s patient record. *See id.* (stating "last edited by Kevin Critchlow, MD"). In any

18

event, the ALJ only considered Dr. Critchlow's opinion "[a]s it relates to [M.L.'s] alleged physical impairments," and M.L. does not challenge the ALJ's assessment of the severity of his physical impairments. *See* AR 34. Third, while M.L. points to a May 2020 CT scan that Dr. Critchlow reviewed that demonstrates DDD as support for Dr. Critchlow's opinion, the ALJ correctly observed that M.L. has not received any follow up treatment for complaints of back pain since May 2020. AR 30. All treatment notes cited by M.L. as evidence of his complaints of back pain are from May 2020. AR 452, 453, 454, 456, 457, 460. In addition, M.L. does not dispute the ALJ's observation that Dr. Critchlow did not perform any physical examination of M.L.

Finally, M.L. argues that because the ALJ did not rely on Dr. Critchlow's opinion, the ALJ's RFC determination "has no support in evidence." Dkt. No. 10 at 21-22. M.L.'s criticism is essentially a challenge to the ALJ's RFC determination rather than the ALJ's evaluation of the medical opinion. This argument is not persuasive. The ALJ considered medical opinions, prior administrative medical findings, treatment notes, and M.L.'s subjective symptom testimony in reaching his conclusion that M.L. has the RFC to perform medium work. *See* AR 29-35. Indeed, the ALJ noted that although Dr. Tang and two state agency medical consultants assessed no limitations of function and no severe physical impairments, "the record does warrant the recognition of severe lumbar DDD based on the May 2020 CT of the lumbar spine." AR 34. The ALJ further explained that despite the finding of severe lumbar DDD, M.L.'s testimony about continuing to exercise, including stretching and jogging a couple of times a week, as well as his general lack of complaints to providers and other physical findings on examination by Dr. Tang, support the RFC determination. *Id.*

Accordingly, the Court concludes that substantial evidence supports the ALJ's evaluation of Dr. Critchlow's opinion as unpersuasive and the resulting RFC determination regarding M.L.'s physical limitations.

### B.    Step Two: Severity Assessment

Relying principally on his critique of the ALJ's evaluation of Dr. Catlin's and Dr. LaGue's opinions, M.L. argues that the ALJ erred in finding his mental impairments not severe. Dkt. No. 10 at 6-12. M.L. also points out that by rejecting all medical opinions relating to his mental

impairments, the ALJ relied heavily on his own reading of M.L.'s treatment records in assessing the severity of those impairments. *Id.* at 5, 22. The Commissioner responds that the ALJ's determination is supported by substantial evidence. *See* Dkt. No. 11 at 1-5.

"Although the claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record." *Ludwig v. Halter*, 5 F. App'x 689, 690 (9th Cir. 2001) (citing *Armstrong v. Comm'r of Soc. Sec.*, 160 F.3d 587, 589-90 (9th Cir. 1998)); *see also Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."). The ALJ's duty is heightened where the claimant is suffering from a mental condition "[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence . . . ." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

"The duty to develop the record is such that the ALJ may not decide an issue against the claimant based on the absence of evidence in the record." *Ludwig*, 5 F. App'x at 691. Where "the record is devoid of evidence to support a finding either for or against the claimant on a determinative issue, further development of the record, via consultation with a medical expert, is mandatory." *Id.*; *see also Armstrong*, 160 F.3d at 589 (holding that where record was unclear as to determinative issue, ALJ "committed reversible error" by deciding issue without consulting a medical expert).

Here, after the ALJ rejected Dr. Catlin's and Dr. LaGue's opinions as unpersuasive, the ALJ lacked any medical opinion evidence regarding M.L.'s mental impairments, such that his findings regarding the severity of M.L.'s mental impairments and the impact of M.L.'s mental impairments on the RFC are not supported by any medical opinion but are instead based solely on the ALJ's own interpretation of the raw medical data contained in eight months of treatment notes. This was improper. *See Corvelo v. Kijakazi*, No. 20-cv-01059 WHA, 2022 WL 1189885, at *5 (N.D. Cal. Apr. 21, 2022) (finding reversible error where the ALJ rejected "all medical opinions on claimant's mental impairments, leaving none on which the ALJ could rest his conclusion" and relied "solely on his own lay interpretation of the raw medical evidence contained in claimant's

treatment records"); *C.D. v. Kijakazi*, No. 22-cv-05574-VKD, 2024 WL 40210, at \*7 (N.D. Cal. Jan. 3, 2024) (remanding for development of the record because "[h]aving rejected all of the medical opinions regarding C.D.'s mental impairments as 'not persuasive,' the ALJ appears to have relied upon her own lay assessment of the limiting impact of C.D.'s mental and other impairments."); *Donna S.*, 2022 WL 17970216, at \*2-3 (holding that the ALJ failed to develop the record where "four out of five of the state agency clinicians . . . found that there was insufficient evidence to render a medical opinion," leaving the ALJ with "*no* medical opinions regarding [p]laintiff's mental impairments").

As noted above, both state agency medical consultants stated that there was insufficient evidence to evaluate M.L.'s mental impairments and highlighted the need for testing. Dr. Koutrakos stated that "testing appears needed," AR 84, 99, and Dr. Catlin stated that M.L.'s score of 14 on the Montreal Cognitive Assessment "indicat[ed] that more testing should be considered," AR 488. Multiple treatment notes state that the "[p]lan" is to "[a]ssess [M.L.] for depressive symptoms," suggesting that providers at LifeLong Medical also believed M.L. needed a psychological assessment. *See* AR 561, 569, 637, 657. As the record contained insufficient evidence, once the ALJ found Dr. Catlin's and Dr. LaGue's opinions unpersuasive, he had a duty to develop the record further; he was not free to simply substitute his own lay opinions in place of medical opinions. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (citation omitted) ("The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'").

In sum, the ALJ erred because his findings regarding the severity of M.L.'s mental impairments and the impact of M.L.'s mental impairments on the RFC were made without the benefit of any medical opinion regarding M.L.'s mental impairments. Accordingly, the Court finds that the ALJ's conclusions regarding the severity of M.L.'s mental impairments and the impact of those impairments on the RFC are not supported by substantial evidence.

### C. M.L.'s Subjective Symptom Testimony

M.L. argues that the ALJ "failed to articulate any significant inconsistencies between the opinion evidence and [M.L.'s] own descriptions of his symptoms and limitations," relating to his

21

mental impairments. Dkt. No. 10 at 22. Specifically, M.L. argues that the ALJ should have credited his testimony about his struggles with memory, concentration, and focus and social anxiety. *Id.* at 22-24. The Commissioner argues that substantial evidence supports the ALJ's evaluation of M.L.'s statements about his symptoms. Dkt. No. 11 at 9-10. The Court agrees with the Commissioner.

In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281, 1283-84); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons."). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation modified). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Treichler*, 775 F.3d at 1106 (citation omitted). Although lack of medical evidence cannot form the sole basis for discounting a claimant's subjective testimony, it is a factor that the ALJ can consider in his credibility analysis. *See Burch*, 400 F.3d at 681.

At the administrative hearing on October 3, 2024, M.L. testified that he stopped working in 1986 because he was "put on disability . . . because of [his] psychological trauma." AR 58, 69. He testified that he did not recall the mental diagnosis that led to him taking disability leave from work. AR 69-70. M.L. testified that after he ceased working in 1986, he had a professional boxing career during which he suffered concussions approximately three times. AR 65-66.

As of the date of alleged onset in June 2021, M.L. testified that he was able to do "odd

jobs," such as yard work, "a couple times a week" until about one year before the hearing, or the fall of 2023. AR 58-59. M.L. stated that he suffered another concussion after falling in his apartment in September 2023. AR 66. M.L. stated that he continued to struggle with fogginess and forgetfulness following the September 2023 fall. AR 67. M.L. testified that his ability to concentrate or focus is "sometimes" affected. *Id.* M.L. testified that since the September 2023 fall, he has called his counsel multiple times per day and then forgot why he called. AR 73. M.L. testified that sometimes, he does not remember what he has just done. *Id.*

M.L. also testified that he keeps to himself the majority of the time and that he does not have friends. AR 67-68. When asked why he stays alone, M.L. testified that he does not know a lot of people and that the people he does know do not live around him. AR 68. M.L. said he sometimes experiences panic or anxiety attacks. *Id.* He stated that he cries because of his situation. *Id.* M.L. testified that he was homeless for years before moving into a studio apartment alone about one year before the hearing, or the fall of 2023. AR 71. M.L. testified that he is able to make his bed and cook for himself. *Id.* He testified that he suffers from insomnia and takes medicine to sleep. AR 74.

The ALJ found that M.L.'s medically determinable impairments could reasonably be expected to cause his alleged symptoms, however, he also found that M.L.'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 30. As the ALJ did not identify any affirmative evidence of malingering, he was required to provide specific, clear, and convincing reasons for this determination. The ALJ's decision meets this standard.

In discounting M.L.'s testimony, the ALJ explained that M.L.'s statements during the hearing are inconsistent with M.L.'s statements to treating providers and the clinical and objective findings contained in the longitudinal record. AR 30. Specifically, the ALJ noted that M.L. reported to Dr. Tang on January 31, 2023 that he is fully able to care for his personal needs. AR 31 (citing AR 503). The ALJ noted that treatment notes from LifeLong Medical showed no complaints or diagnoses of depression or anxiety during the period from August 10, 2023 to April 24, 2024. AR 33 (citing AR 518-664). The ALJ also observed that the treatment notes showed

United States District Court
Northern District of California

normal mental status exams, including findings of intact memory. AR 33-34 (citing AR 560, 568, 636, 648, 656). The ALJ noted that although Dr. Catlin assessed that M.L. has a mild cognitive impairment based on his MoCA score, Dr. Catlin also stated that the results should be interpreted with caution and that more testing should be considered. AR 33 (citing AR 488). The ALJ further observed that RBANS testing performed by Dr. LaGue showed M.L. has average attention, and Dr. LaGue stated that M.L. "was engaged in the evaluation and able to sustain his attention." AR 34 (citing AR 510-511).

With respect to M.L.'s history of concussions, the ALJ noted that after M.L. suffered a fall off his bicycle in November 2023, a CT scan of M.L.'s head was within normal limits and M.L.'s "symptoms were improving overall." AR 31 (citing AR 592). The ALJ further noted that at a follow-up appointment on December 1, 2023, M.L. continued to report improvement. *Id.* (citing AR 585). Additionally, in discussing the paragraph B functional areas, the ALJ specifically noted other evidence, including M.L.'s function report in which M.L. reported that he needs no reminders to take care of personal needs and grooming or to take medication. AR 28 (citing AR 372). The ALJ also considered that M.L. reported he can prepare meals daily; perform cleaning, mowing, and ironing "every day"; use public transportation; shop in stores "everyday [for] 2 hours"; and pay bills and count change. AR 29 (citing AR 371-373). The ALJ noted that Dr. Catlin observed that M.L. was engaged in the examination and able to sustain his attention and that he was able to perform within the normal range on serial 7 subtraction and when asked to tap or clap when he heard the letter A when read a string of letters. AR 28 (citing AR 487-488).

Viewing the record as a whole, the Court finds that the ALJ provided sufficient specific, clear, and convincing reasons for discounting M.L.'s subjective testimony regarding the intensity, persistence, and limiting effects of his mental impairments.

IV. **DISPOSITION**

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings. *See Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g). On remand, the ALJ must further develop the record regarding M.L.'s mental impairments. The ALJ may reassess all of the opinion evidence in the record, as well as M.L.'s subjective testimony,

24

in view of the additional evidence regarding M.L.'s alleged mental impairments developed on remand.  It is not the Court's intent to limit the scope of the remand.

## V.    CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 30, 2026



Virginia K. DeMarchi
United States Magistrate Judge

25